# The People of the State of Illinois, ex rel The Attracto=graph Company, Petitioner, v. William H. Dietrich, Respondent.

## Gen. No. 16,914.

1. MANDAMUS—*when alternative writ issues in Appellate Court.* "An alternative writ" or "rule to show cause" or "summons" on a petition for a mandamus will not issue unless leave has first been obtained to file the petition and a summons or rule has been ordered. (The former practice in this district changed.)

2. MANDAMUS—*when verification of petition insufficient.* A verification of a petition for a writ of mandamus is insufficient,—indeed, is no verification at all, where it is sworn to to the best of the "knowledge, information and belief" of the petitioner.

3. MANDAMUS—*appropriate form of traversing answer.* The proper pleading in mandamus suits to traverse the answer of a respondent (which answer takes the place of a return to the alternative writ under the old practice) is by a plea to such answer.

4. MANDAMUS—*when motion to strike inappropriate.* A motion to strike in mandamus is not adapted to test the substantial rights of the parties, and when a doubt as to the materiality of an allegation in pleading sought to be stricken out exists, a demurrer should be interposed.

5. MANDAMUS—*when judge of Municipal Court cannot be compelled to sign statement of facts.* A judge of the Municipal Court cannot be compelled to sign a statement of facts which he does not concede to be correct, as the determination of the correctness of the statement of facts is a judicial duty with which the Appellate Court will not interfere. Either a statement of facts must be presented to the judge which he concedes to be correct or a correct stenographic report of the proceedings at the trial, etc., must be resorted to as the means of obtaining an adequate review.

Petition for mandamus. Heard in this court at the October term, 1910. Petition dismissed. Opinion filed November 20, 1911.

S. M. MEEK, for petitioner.

WILLIAM C. MOODY, for respondent.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This cause is a proceeding in which the writ of *mandamus* is prayed from this court against a judge of the County Court of Schuyler county, who, under the Municipal Court Act, had presided at a branch of the Municipal Court of Chicago at the request of the judges thereof. The writ was prayed in aid of the jurisdiction of this court in a writ of error from this court to said Municipal Court, which is upon the docket of this court as No. 16569, and is entitled the Moore-Bond Company, defendant in error, v. The Attractograph Company, plaintiff in error.

In this last entitled cause the writ of error was sued out of this court on March 16, 1910, to reverse a judgment for $734.70 and costs rendered by the Municipal Court—Judge William H. Dietrich, the defendant herein, presiding—on February 23, 1910, against the Attractograph Company and in favor of the Moore-Bond Company.

The allegations of the petition for the writ, in addition to those setting forth the judgment above described and the pending writ of error, are that the Attractograph Company, the defendant in the said judgment and the relator herein, after said judgment, obtained time under the statute, by an extension of time granted within thirty days from the judgment until April 14, 1910, to file "its bill of exceptions," that on April 14, 1910, it presented, by its counsel, to Judge Dietrich, who tried the cause, "a correct statement of facts appearing upon the trial of the case," and that said statement of facts so presented was on the same day marked "Presented to me for signature this 14th day of April, 1910.    W. H. Dietrich," and was then turned over by Judge Dietrich to plaintiff's counsel for examination, and the settlement thereof continued until two o'clock in the afternoon of the same day; that at two o'clock the settlement of the proposed statement of facts came up for hearing, and the "statement" was objected to by counsel for plaintiff on the ground that the same did not contain all the evidence or facts heard in the trial of the cause; that thereupon the relator "by its counsel requested the court to point out to it in what respect the statement of facts so tendered was insufficient, that the court refused to point out to the relator or its counsel in what respect said statement of facts so presented was insufficient and endorsed thereon," "Refusal of signature on the ground that the bill does not contain a correct transcript of the evidence of witnesses, and the rulings of the trial court on testimony introduced, and sets out matters and documents

which are not admitted in evidence. W. H. Dietrich, Trial Judge;'' that the matter again came on to be heard on the 28th day of April, 1910, on the motion of the relator to settle and sign the proposed statement of facts; that at that time the court (the defendant herein) instructed counsel for the plaintiff to point out the errors in the statement of facts so presented by the relator, and the proposed statement of facts was delivered by the relator to the counsel for plaintiff, for the purpose of allowing him to point out the errors therein, if any; that the ''statement'' remained with the plaintiff's counsel until June 22, 1910; that on June 24th the matter again came on for hearing before Judge Dietrich on the motion of the relator to ''settle and sign the proposed statement of facts,'' and that ''thereupon the court refused to settle and sign the proposed statement of facts, by means whereof the relator is prevented from incorporating in the record of the Municipal Court a correct statement of the facts or correct stenographic report or a correct bill of exceptions, to properly prosecute its writ of error heretofore sued out of the Appellate Court of Illinois,'' etc.

The petition then ''prays a writ of *mandamus* directed to said William H. Dietrich as judge, commanding him forthwith to settle and sign the proposed statement of facts presented and marked presented by him on the 14th day of April, 1910, and cause the same to be filed of record in the Municipal Court of Chicago, and that such further order may be made in the premises as justice may require.''

The petition purports to be ''verified'' by the president of the relator in the following terms:

''R. Glendenning being first duly sworn deposes and says that the several matters and things in said petition contained are true to the best of his knowledge, information and belief.''

Under the practice which then prevailed in this court, process denominated ''a *mandamus* alternative writ,''

but which is certainly differentiated from the common law "alternative writ," and is more properly a mere "rule to show cause," was issued as of course by the clerk and without leave from the court to file the petition, or a reference of the petition to the court or an order from the court for an "alternative writ" or a "rule to show cause" or "a summons." We do not regard this practice, although one followed for many years in this court, a correct or desirable one. It is not the rule in the Supreme Court even, which has, like the Circuit Court, original jurisdiction in *mandamus* proceedings; while the Appellate Court can entertain such an application only when the *mandamus* desired is in necessary aid of its previously acquired jurisdiction in some other matter. The Supreme Court has always held that the statute of 1874—"To Revise the Law in Relation to *Mandamus*"—applies only to practice in the Circuit Courts, and that in the Supreme Court the summons even in an original independent proceeding will not be awarded as a matter of course, but only upon cause shown by petition, and the petition can be filed only upon leave granted for that purpose. People ex rel. Cunningham v. Thistlewood, 103 Ill. 139.

This used also to be the practice in this and other Appellate Courts in this State. Hawkins v. Harding, 35 Ill. App. 25, and People v. Knodell, 40 Ill. App. 101.

It may still be the rule in other districts than this. Why it was changed in this district we are not advised, but we have returned to the former practice, which we approve, and hereafter no alternative writ or "rule to show cause" or "summons" on a petition for a *mandamus* will issue unless leave has first been given by the court to file the petition and a summons or rule has been ordered.

The "alternative writ" or "rule to show cause" or "summons," whichever it may be properly called, given to the relator, was served by the sheriff on Judge

Dietrich on September 26, 1910. He, thereupon, on October 6, 1910, entered, by his counsel, a special appearance for the purpose of making a motion "to strike the petition from the files and to quash the writ theretofore issued."

For this requested action by the court he assigned four reasons:

*First*: That no leave to file the petition had been given.

*Second*: That there was no order for the issuance of the so-called "alternative writ."

*Third*: That the affidavit to the petition was insufficient.

*Fourth*: That it appeared on the face of the petition that the respondent had lost jurisdiction to sign said statement of facts, and could not therefore be compelled by *mandamus* to do so.

On October 13, 1910, this motion was overruled by this court. As our conclusions in this case, after full consideration, are based on our opinion that the original petition was insufficient and that no *mandamus* could properly be ordered on it, it is perhaps proper to notice here our present view that the motion in question was not inapt, and should perhaps have been granted.

The conclusion that the first two reasons assigned by the moving party were not sufficient, were doubtless based on what had been the long continued practice of the court, and that the third was held insufficient, must have been in the last analysis, because the court held that the sufficiency of the petition, like the issuance of a summons upon it without order, was regulated in this court, as in the Circuit Court, by the Mandamus Act. For, if the practice in this court be not regulated by that Act, but by the common law as modified by the Statute of the 9th Anne (as we think it is), both the leave and order were necessary, and a verification of the petition was required. Merrill on Mandamus, 246;

People ex rel. Chamberlain v. Chicago, 25 Ill. 402. But the supposed verification before set forth is none at all. It is one which a person who had no knowledge whatever of the matter could make with impunity. Such an affidavit was held insufficient in Gunning v. Sheahan, 73 Ill. App. 118.

Referring to the fourth reason given for the motion, however, the real objection to the sufficiency of the petition on the merits, which should, according to our present views, have prevented leave being granted to file it, lay not in the loss of jurisdiction on the part of the defendant to sign a correct statement *presented* to him within the statutory thirty days but not within said time *signed* by him, but deeper still, in the insufficient showing that the statement presented to the respondent was one which it was his administrative or ministerial duty as distinguished from a judicial one (involving exercise of his judicial power and discretion), to sign. Of this we shall treat hereinafter, however.

On the overruling of the motion to strike the petition from the files, the respondent, Judge Dietrich, on October 20, 1910, filed "an answer to the petition," or, more properly, a return to the "alternative writ" or "rule to show cause," in which he set up:

*First*: That he (the respondent) was always willing to sign a *correct* statement of facts.

*Second*: That no *correct* statement of facts was ever prepared and presented to him for signature.

*Third*: That the statement presented April 14, 1910, was incorrect and defendant, although presenting the same one again, never presented another.

*Fourth*: That it is not the duty of the judge, under paragraph 6, sec. 23, of the Municipal Court Act, to point out errors in a statement presented, or to prepare the statement, nor to sign one prepared by counsel which is incorrect.

(*Note*: This fourth proposition of the answer is based on the words of the Municipal Court Act, which are: "It shall be the duty of the Judge by whom such final order or judgment was entered *to sign and place on file in the cause*, in which the same was entered, *if so requested by either of the parties to the suit, a correct statement, to be prepared by the party requesting the signing of the same*, of the facts appearing upon the trial thereof and of all questions of law involved in such case and the decisions of the Court upon such questions of law."

It is to be seen from this language that it is not a "bill of exceptions" that the Judge by this language is compelled to sign, and that his duty as to it is a different one from that imposed by the common law on a trial judge in relation to exceptions. The "statement" provided for was, however, doubtless understood by the framers of the law as in a sense a substitute in a simplified practice for a "bill of exceptions.")

*Fifth*: That even if the statute imposed on the judge the duty of rendering assistance in the preparation of "a correct statement of facts," the relator was so negligent and presented his statement so late that it was impossible for respondent to do so.

*Sixth*: That after April 14, 1910, respondent lost all jurisdiction to sign and file a statement.

The proper pleading in *mandamus* suits to traverse the answer of a respondent (which answer takes the place of a return to the alternative writ under the old practice) is by a "plea to the respondent's answer," and this is what the pleading denominated by the relator a "replication to respondent's plea" must be considered. It was filed by the relator on March 18, 1911.

Before describing it we will note what we consider the correct theory of pleading to an answer in a *mandamus* proceeding. Before the Statute of 9th Anne concerning *mandamus*, the return made to the common law "alternative" writ was conclusive if it set up matters which were sufficient in themselves to prevent the issuance of a mandamus. Whether the return was true or false, the chance of the petitioner for a *mandamus* was gone if it was legally sufficient.

The only remedy of the defeated petitioner of the return or "answer" was by an action for money damages for a false return. The petitioner thus began a

new law suit, setting up in as many counts of the declaration as were necessary the falsity of the respective allegations of the return.    To do this of course required in many instances the repetition of the allegations of his petition, but in such forms as lent themselves to the purpose and end of common law pleading, singleness of separate issues of law or fact to be reached by further pleading or demurrers.

The Statute of Anne merely changed this practice by allowing the answer or return to be traversed by pleas to it in the same suit, instead of by a declaration in a new suit, and by giving the relator a chance in that same suit to secure a mandamus as well as damages. It will thus be seen that the relator's pleas to the answer correspond to the declaration in the former practice in an action on the case for a false return, and necessarily, like such a declaration, required often the repetition of the allegations of the original petition.

The plea of the relator in the case at bar to the answer of the respondent was not artificially drawn for a common law pleading in *mandamus*, but as we shall dispose of this matter on its substantial merits according to our view of the law, it is not necessary to discuss the question of its form as presenting double or immaterial issues.    It contained these points or allegations.    Relator asserts that—

1.    Respondent did refuse to sign a *correct* statement of the facts.

2.    Respondent was at no time willing to sign a correct statement of facts, but refused to do so.

Relator denies that—

3.    "No correct statement was presented."

4.    "That the statement that was presented did not contain a correct version of the facts or did contain anything improper to be inserted."

The relator alleges also that—

5.    Respondent spoke of errors when that statement was presented, but refused to point out errors in it—

"Because, as he claimed, it would put upon him, the respondent, the burden of making up a correct statement of facts for the relator."

6. The plaintiff in the said case that had been tried —the Moore Bond Co.—had a stenographer at the trial, and respondent used the notes and relator could not get at them, and respondent refused to order them submitted to relator, and so relator was not negligent as alleged, and ought not to be prevented from getting his "statement" signed.

On April 24, 1911, the respondent made a motion to strike this plea of the relator from the files, setting forth reasons substantially repeated in the general and special demurrer afterward filed to the plea, on which demurrer we purpose to dispose of the entire case. The reasons given for this motion, therefore, need not be recited. The motion was denied by this court on May 8, 1911, on the ground that the "motion to strike," although known to the common law as an extraordinary part of the system of pleading in *mandamus* (and other common law) proceedings, should not be used to take the place of a demurrer to test the legal sufficiency of the theory of the case which the relator desires to present.

As the court says in Whitney v. Cady, 71 Conn. 166, the "motion to strike" was never intended and is not adapted to test the substantial rights of the parties, and when a doubt as to the materiality of an allegation in pleading sought to be stricken out exists, it is the right of the party to be heard in full on demurrer.

The motion to strike the plea of relator to respondent's answer having been denied, the respondent was ruled to demur or reply to the said plea.

On May 17, 1911, he filed his general and special demurrer to said plea. It is on this demurrer that we are now, after argument, called to pass.

The special grounds of demurrer assigned are:

*First*: That a large part of said replication is a

repetition of the allegation of relator's original petition in said cause.

*Second*: That said replication contains new matter not contained in relator's original petition.

*Third*: That said replication contains statements of alleged facts which are immaterial to any issue in the cause.

*Fourth*: That said replication concludes in effect with a chancery prayer for relief.

*Fifth*: That said replication does not tender any issue and that the same is in other respects uncertain, informal and insufficient.

What we have already said concerning the proper form and course of pleading in *mandamus* shows that neither the first or second of the special causes assigned (which, incidentally it may be said, are mutually self-destructive) is a valid objection to the plea. The third, fourth and fifth are as to matters of form and might demand discussion and perhaps sustainment if it were not, as we think, necessary and desirable to dispose of the case on the merits. These came before us on the general demurrer.

For although the allegations of the plea are not demurrable because they are the repetitions of the allegations of the petition, or because they are new matter *not* repetitions of the allegations of the petition—they may be demurrable in either case, because they are insufficient in law. They may, in other words, present no ground for a judgment against the respondent, and, moreover, under the familiar rule of pleading which carries back the searching qualities of a demurrer through previous pleadings to one where the insufficiency in legal theory first appeared, we may and should, under this demurrer, go back, if necessary, to the petition in the cause.

We have done so, and have come to the conclusion that no case has been presented by the pleadings of the

relator demanding or justifying an issuance of a *mandamus* on our part.

The petition on its face shows that the respondent declined to sign the "statement," which the relator says was "a correct statement of facts appearing upon the trial of the case" (and which is "the proposed statement of facts" which the relator prays a mandamus on the respondent to sign) because he, the respondent, did not hold it to be correct, but, on the contrary, held it contained incorrect statements.

It has indeed been argued before us that his ground of refusal, as set out in the petition, does not amount to this position; but we are of the opinion it does. How are we to determine the question whether or not the "proposed statement" was correct? By what machinery? It would be an impossible position in which to place the Appellate Court to require it to determine, in any given case in the Municipal Court which the defeated party desired reviewed, whether or not he had presented a correct statement of facts to the court. It is a part of the judicial function of the judge of the Municipal Court to decide and determine this, and a part of his judicial duty which we cannot constrain by *mandamus*.

An analogous rule as to "bills of exceptions" has been recognized both early and late in the jurisprudence of this State. The Supreme Court has said that no *mandamus* will issue to a trial judge in the Circuit Court to sign any particular "bill of exceptions." The People v. Pearson, 2 Scammon, 189; The People v. Anthony, 129 Ill. 218.

"He must at last determine the accuracy of the bill which he verifies," says the court in the last case. And so it is here. If the court should admit a "statement of facts" presented to be correct, and still refused to sign it, a different question would be presented.

But it is said that although the Supreme Court has said that a *mandamus* will not lie to a trial judge in

the Circuit Court to file any particular bill of excep-
tions, it expressly holds that he may be commanded to
sign *some* bill of exceptions.    This is true, but apart
from the fact that the petition in this case calls on him
to sign "the proposed statement of facts"—a prayer
which might be changed by amendment of the petition
—the "statement of facts" provided for in fourth and
fifth class cases by the Municipal Court Act, is not "a
bill of exceptions," as we have before indicated.    It
is, in the event that the party desiring the review shall
so elect, undoubtedly intended to take the place of "a
bill of exceptions"—"exceptions" being expressly ren-
dered unnecessary by the Act.    But it is differenti-
ated from a bill of exceptions by being even more ab-
solutely a matter of judicial determination than a bill
of exceptions could be.    It is to be a statement of
"the facts appearing" and "of the questions of law
involved," the determination of which is the very gist
of the judge's judicial function; and as the express
language of the Act relieves the judge of the duty of
drawing the statement by saying it is "to be prepared
by the party requesting the signing of the same," the
result must necessarily be that where the judge does
not concede the correctness of the statement presented
to him, and refuses to sign it, the party must prepare
and present to him, within the allowed time, one the
correctness of which the judge will concede, or choose
the other alternative allowed him by the Act and pre-
sent a correct stenographic report of the proceedings
at the trial, etc.,—a very different thing from "a state-
ment of facts appearing" and "questions of law in-
volved."

By what we have said, however, we must not be sup-
posed to indicate that a judge of the Municipal Court
should not, in the exercise of his judicial discretion,
point out to counsel, on proper occasion and opportun-
ity, the points in which a proposed statement that he

declines to sign is incorrect, in order that if there be time it may be amended and again presented. It may be presumed that this would be the usual course.

We think the general demurrer of the respondent to the plea of relator to the respondent's answer in this case should be carried back to the petition and sustained, and that as it appears on the face of the petition that it cannot be so amended (now that the time has long passed in which any other "statement of facts" could be presented to the court) to make a case for the issuance of a *mandamus* to the respondent of the nature prayed for, the petition should be dismissed. It is so ordered.

*Petition dismissed.*